Dunkin, Ch.
delivered the opinion of the Court.
In respect to the property included in the deed of 1832, the Court concur entirely in the judgment of the Chancellor, and for the reasons stated by him. It is deemed necessary to add any thing to what he has said, only in consequence of the defendant’s last ground of appeal. It is said that “ in any view, the demands oí the defendants, or at least so much of them as was properly chargeable on the trust property, should have been ordered to be paid out of said property, or its income.”
It would be out of place, or at least premature, to discuss here at large the principles on. which this Court acts, in subjecting trust property to the payment of debts. They have been very fully considered and declared in the case of Reid v. Lamar, decided in December, 1846. In loor v. Hodges, the defendant had levied on property secured by a marriage settlement. The Court rendered the injunction perpetual, declaring that whatever might be the equitable interests of the .husband, or whatever the rights of his creditors, they should be brought to the notice of the Court in proceedings properly instituted by them for that purpose. If an execution at law can be levied on the property, “ I do not perceive,” says Chancellor Harper, “what purpose is answered by having a trustee or marriage settlement. If creditors are compelled to come into Equity lor the purpose of making the husband’s interest liable, there are various equities by which their claims might be rebutted.”
Some of these remarks are not inapplicable to the property embraced in the bill of sale from Samuel M. Hankins to Whitfield Brooks, bearing date 9th January, 1829, which I now propose to consider. There are some leading facts in relation to this transaction, which the Court think abundantly sustained by the witnesses and corroborated by circumstances.
The important inquiry is whether this was a purchase made by B. M. Blocker, “ on his own account and for his own purposes,” as supposed by the decree, or whether it was a purchase for the wife and children of Blocker; and supposing the latter to be the true character of the transaction, a subordinate enquiry arises, whether any part of the purchase money was paid, or agreed to be paid, by B. M. Blocker. The bill of sale executed by Hankins at the time, is in the name of Whitfield Brooks as vendee, and acknowledges the consideration money to have been paid by him, or to haye been re- *131 ©eived from him. This creates a presumption, that at least the purchase was not made for Blocker. Mr. Brooks being one of the complainants on the record, was not examined as a witness, although the defendants relied much on the statements of the bill, so far as they seemed to impair his claims as trustee. Certainly the bill, as such, is not evidence, either for or against the complainant. In this case the bill is sworn to by Mr. Brooks, and therefore is admissible, as an acknow-ledgement by him under oath. But in this character I think it should be received like all other admissions of a party, that is to say, the whole admission, the whole affidavit, should be taken together. He states, in the most unequivocal terms, that the -slaves, Elsey and her children, “ were purchased upon consultation with him, and with his privity, with the express intention that he should hold them in trust, for the separate use of his sister, Mrs. Blocker, and her issue.” The Chancellor, very properly, does not reject this part of his statement, but comments upon it, and comparing it with the other circumstances so fully'discussed in the decree, adopts the conclusion that “ Mr. Brooks” (in the language of the decree,) “ had forgotten all about this business, for (says he) he is as incapable of a wilful mis-statement, as he is of fraudulent intention or dishonorable dealing.”
Passing by, for the present, the statements of Mr. Brooks, and bearing in mind only the indubitable fact that the bill of sale was taken in the name of Brooks, there were three other witnesses as to the character of the purchase, to wit: Hankins, the vendor, Elijah Bird, and William Moore, who is a subscribing witness to the bill of sale. Hankins was a young man, was about to remove to Tennessee at the time of the sale, and has ever since resided there. He speaks of a transaction which took place some seventeen years prior to his examination. He says that Blocker bargained with him for the negro Elsey and her children ; that he told him at the time, that his wife wished his daughter to have Elsey. as she was a favorite negro ; that it has been witness’s impression ever since, that he at that time secured the title to his daughter, though he might be mistaken; thinks that Blocker gave him a letter to Brooks for part of the purchase money; that his impression has long been, that he made the bill of sale for the negroes at Blocker’s house, to his daughter. Knows that Blocker told him at the time, that he wished it so made. The full examination of this witness forms part of the decree.-
In the cross examination of Elijah Bird, he was asked if he had ever heard any thing about these negroes being the trust estate of Mrs. Blocker and children, until an attempt was made by Blocker’s creditors to make them liable for his debts. The witness had previously stated, that Hankins, in returning from South Carolina to Tennessee, in January, *132 1829, had stopped a few days at witness’ house, in DeKalb county, Georgia. In reply to this cross interrogatory he says, among other things, that “he is of the opinion, that Hankins did state to himself and wife, in January 1829, that the ne-groes were bought by the request and for the benefit of Mrs. Blocker.”
But William Moore was the subscribing witness. He had been a Clerk of Blocker’s, and was then living in the house, and continued to live there till the Fall of 1830 ; “thinks that Blocker purchased the negroes from Hankins, at the request of Mrs. Blocker, and, as witness believes, for Mrs. Blocker’s benefit.” There was a bill of sale for the negro woman and her children, executed to Whitfield Brooks, to which the deponent was a witness. He further testifies that he was living with Blocker in May, 1829, at the time his property was sold by Edmund Belcher, Sheriff of Edgefield District ; that he was present at the sale of the property; that, at the day of sale at his house, Col. Z. L.‘ Brooks, or Whitfield Brooks, remarked that the negro woman Elsey was not liable for B. M. Blocker’s debts j that they were purchased for the separate use and benefit of Mrs. Blocker j that the slaves Elsey and her children were not sold at the Sheriff’s sales of B. M. Blocker’s property, in 1829, and for the reasons he has stated. In his cross examination he says that “ the negro woman Elsey was not sold at Sheriff’s sales, but was exempted, as the property of Mrs. B. M. Blocker.” He further says, that the bill of sale was written by Blocker at his house, but does not know whether it was delivered to Blocker, or to whom; Brooks was not present. Witness saw Hankins execute the bill of sale, and he subscribed the same as witness.
After the sales of Blocker’s property in May, 1829, a very considerable amount of judgment debts remained, and yet remain, entirely unsatisfied. When it is a conceded fact that, from May, 1829, when, according to Moore’s testimony, Elsey and her children were excepted as the property of Mrs. B. M. Blocker; that they have remained in her unchallenged possession until the levy of this execution in 1845. it seems to the Court very difficult to entertain any doubt as to the nature of the transaction, or the notorious character of the complainants’s claims. It is true that the amendment to Blocker’s schedule in April, 1829, made in the handwriting of Mr. Brooks, affords much ground for the observations of the decree. But how is it possible to reconcile the construction put upon this act, with the depositions of the witnesses 1 with the announcement at the Sheriff’s sales the very next month ? (for Moore does not say that notice was given of a mortgage, or of any other claim of that character, but that Elsey and her children were not liable for Blocker’s debts, because they had been purchased for the separate use and benefit of Mrs. *133 Blocker, and they were accordingly exempted from the sale for that reason;) or how. with the acquiescence of urgent and enquiring and disappointed creditors for seventeen years af-terwards? ^ . ■
But the loose manner in which the amendment to a schedule of an insolvent debtor is often made, is well known to all who have had occasion to be familiar with such proceedings. While the omission to insert the property in the original schedule, is rather an argument that the debtor did not believe it formed any part of his estate, it may be put in the amendment, because an after-thought, or the suggestion of others, may create a question whether he has not some right, and there is no harm in inserting it; and this leads to the en-quiry whether, although the purchase was made for Mrs. Blocker and her children, and the title taken to Whitfield Brooks, to carry that object into effect, B. M. Blocker may not have paid some part of the purchase money, for which he, or his creditors under the assignment, might have an equitable claim on the negroes. Relying on the testimony of Han-kins and Bird, it is quite clear that the whole purchase money was paid by Brooks, and not a dollar by Blocker. But Mr. ¿rooks says that he paid but four hundred dollars, with interest, of the purchase money, which was refunded from the profits of the trust estate of Mrs. Blocker, settled upon her by her father, and he, therefore, concludes that the residue of the purchase money, (two hundred dollars,) was in some way advanced by B. M. Blocker. It is not remarkable that, after such a lapse of time, and amid the multiplicity of pecuniary transactions, Mr. Brooks should fail to recollect the fact of payment by Blocker, or the mode of payment. If any thing could add to the credit of his testimony, it is, that he does not affect to recollect these particulars. His evidence may well be reconciled with that of Hankins and Bird, and also afford some solution to the amendment of Blocker’s schedule. All the purchase money was received by the witnesses from Brooks, but he may have collected money to the amount of two hundred dollars for Blocker, or Blocker may have placed that sum, or choses to that amount, in his hands. Mr. Brcoks concludes, however, knowing what he himself paid, and which had been refunded from the trust property, that, in some mode, two hundred dollars was advanced by Blocker. In April, 1829, he may very well_have considered him as having a claim on the negroes to that extent, and the amendment to the schedule was made. But that he, at that time, well knew that the negroes, Elsey and her children, were not the property of B. M. Blocker, but were held by him as trustee for his sister and her family, is proved, not merely by his ac-knowledgements now, but by the testimony of the witnesses, and by the declarations at the Sheriff’s sales a few weeks afterwards.
*134 It is a familiar rule, that a party asking the aid of this Court, must equity. Blocker’s creditors are entitled to the two hundred dollars, with interest from April, 1829. But the as-sjgnee unc[er the Prison Bounds Act, is not before the Court. The assignment was made nearly twenty years ago, and embraced choses in action to a considerable amount, which were-not bound by the lien of executions and from which the as-signee may have been satisfied. In that e'vent this fund may be liable to distribution among the general creditors of Blocker, among whom are the defendants. The Court, under these circumstances, can make no definitive order as to the appropriation of the fund, but it must be paid into Court by the complainants, with liberty to the creditors to apply by petition, or otherwise, for a further order.
It is ordered and decreed, that the complainants pay into Court the sum of two hundred dollars, with interest from April, 1829 ; that the injunction heretofore granted, to restrain the sale of Elsey and her children, be made perpetual; and that, in all other respects, the decree of the Circuit Court be affirmed, and the appeal dismissed.
Caldwell, Ch. and Dargan, concurred.